Filed 11/18/14  P. v. Lopez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAUL GOMEZ LOPEZ,<br><br>    Defendant and Appellant. | D064085<br><br><br><br>(Super. Ct. No. SCN309047) |

APPEAL from a judgment of the Superior Court of San Diego County, K. Michael Kirkman, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, defendant and appellant Raul Gomez Lopez was charged in an

information with committing a number of acts of sexual molestation on his stepdaughter, who was under the age of 10 at the time of the alleged offenses. The victim, her mother and an aunt made statements to law enforcement officials that substantiated the allegations set forth in the information. If convicted of all of the offenses, defendant could have been given a life sentence. After rejecting earlier offers that exposed defendant to longer periods of imprisonment, on the day his preliminary hearing was scheduled to commence defendant accepted the prosecution's offer to dismiss all but two of the substantive charges in exchange for defendant's agreement to plead guilty to the remaining two charges and be sentenced to a stipulated 29-year prison term. The trial court accepted defendant's change of plea and scheduled a sentencing hearing. However, prior to his sentencing, defendant moved to withdraw his plea. The trial court denied his motion and sentenced him to 29 years of imprisonment.

On appeal, defendant contends the trial court erred in denying his motion to withdraw his plea because he did not understand his plea would require that he register as a sex offender; because, on the day of his plea, he was concerned about his teenage daughter who was missing and unfortunately found dead the following day; and because his attorney had not provided him with an adequate defense. We find no error. The record supports the trial court's finding that the sex offender registration requirement was explained to defendant by his counsel and that defendant's concern for his missing daughter at the time of his plea did not give rise to duress that prevented him from voluntarily changing his plea. The record also supports the trial court's determination

that defendant was adequately represented by counsel, whose efforts helped defendant avoid a life sentence. Accordingly, we affirm the judgment of conviction.

FACTUAL AND PROCEDURAL HISTORY

On August 16, 2012, the San Diego County District Attorney filed a complaint which alleged that defendant had committed eight separate offenses against his stepdaughter: sexual penetration of a child under the age of 10 (Pen. Code,[1] § 288.7, subd. (b); count 1), two counts of a forcible lewd act on a child under the age of 14 (§ 288, subd. (b)(1); counts 2 & 3), four counts of a lewd act on a child under the age of 14 (§ 288, subd. (a); counts 4, 5, 6 & 7), and making a criminal threat (§ 422; count 8). With respect to the lewd acts that were the subject of counts 4 and 5, the complaint further alleged defendant had substantial sexual conduct with a child under 14. (§ 1203.066, subd. (a)(8).) The complaint also alleged defendant had suffered a prior serious felony conviction (§§ 667, subd. (a)(1), 668 & 1192.7, subd. (c)) and a strike prior (§ 667, subds. (b)-(i), 668 & 1170.12).

Defendant was initially represented by Michael Washington, who appeared with defendant on August 24, 2012. According to Washington, he met with defendant at the time of the appearance and discussed the police report that Washington had received. The police report included statements from defendant's wife, his wife's sister and his stepdaughter. In discussing the police report, defendant admitted to molesting his stepdaughter, appeared remorseful and inquired about his potential punishment. In light

---

[1] All further statutory references are to the Penal Code.

of his conversation with defendant, Washington believed it was in defendant's best interest to negotiate a plea agreement that would avoid imposition of a life sentence.

Following defendant's initial appearance, Washington received additional discovery that included a recorded copy of defendant's interview with police, which was conducted in Spanish; an English language summary of the interview prepared by the police was also included. Although Washington did not have the interview translated, the summary indicated that defendant had been given his *Miranda*[2] rights and waived them and that he incriminated himself.

Washington asked the prosecutor to consider striking defendant's 16-year-old prior conviction, but the request was denied. The prosecutor offered defendant a plea agreement that would require a 41-year term of imprisonment; the prosecutor then offered a deal with a 37-year term and, on October 24, 2012, the day of the scheduled preliminary hearing, made a "final" offer of a 29-year prison term. Through a translator, Washington discussed the offer with defendant, and defendant agreed to take it. Defendant executed a change of plea form, appeared before the trial court and plead guilty to one count of committing a forcible lewd act on a child under 14 (count 2) and one count of committing a lewd act on a child under 14 (count 4); he also admitted the serious felony prior and strike prior.

The day after defendant entered his plea, his teenage daughter, who had been missing, was found dead.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Following his plea, defendant retained counsel who filed a motion to withdraw defendant's plea. As he does on appeal, defendant argued his plea was defective because: the trial court did not advise him that upon his release from prison he would be required to register as a sex offender; because defendant's daughter's disappearance constituted duress; and because Washington had failed to adequately investigate the possibility of challenging admission of the statements defendant made in the police interview and had made no motion to strike defendant's prior conviction. Both Washington and defendant testified at the hearing on the motion to withdraw. The trial court denied the motion and sentenced defendant to a term of 29 years in prison.

Defendant filed a notice of appeal. Counsel appointed to represent defendant on appeal filed a brief under the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738; at our invitation, defendant filed a supplemental brief. We then directed the parties to file briefs with respect to issues identified in counsel's initial brief.

DISCUSSION

I

On appeal, defendant contends he did not fully comprehend the consequences of his plea because the trial court did not verbally advise him that he would be required to register as a sex offender. We find no error.

At the hearing on the motion to withdraw, Washington testified that, prior to receiving the prosecutor's final offer, he had discussed with defendant the requirement

5

that upon release from prison he register as a sex offender.  Washington also testified that, on the day defendant changed his plea, he again discussed the registration requirement with defendant and that defendant asked Washington how leaving the country would affect his obligation to register and how often he had to register.  Consistent with Washington's testimony, the change of plea form defendant initialed states that he discussed the registration requirement with Washington.

Washington's testimony and the change of plea form are more than sufficient to establish that defendant was fully advised he would be required to register as a sex offender following his term of imprisonment.  (See *People v. Panizzon* (1996) 13 Cal.4th 68, 83 [executed change of plea form sufficient to establish admonishment and knowing waiver].)  There is no requirement that, in addition to information acknowledged in the change of plea form, a trial court must also verbally advise a defendant with respect to the registration requirement imposed on sex offenders.  (*Ibid*.)  Thus, the trial court did not err in rejecting defendant's contention that he did not fully comprehend the consequences of his plea.

## II

Next, defendant argues his plea was the result of duress.  As he did in the trial court, defendant contends that, at the time of his plea, he was concerned about his missing daughter and did not have enough time to fully consider the prosecution's offer and its implications.  Like the trial court, we reject these contentions.

We of course agree that a plea may be withdrawn if it appears from the record the

defendant ""'was unduly and improperly influenced either by hope or fear in the making of it."'" (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1210, quoting *People v. Campos* (1935) 3 Cal.2d 15, 17.) We also recognize that where there is evidence a defendant was surprised and under unfair compulsion at the time of a guilty plea, a motion to withdraw should be granted. (See *People v. McGarvy* (1943) 61 Cal.App.2d 557, 564.) Thus, in *People v. Campos*, the defendant was permitted to withdraw his guilty plea to murder because, although the district attorney had represented that he would not be sentenced to death, following his guilty plea, the defendant was in fact given a death sentence. In *People v. McGarvy*, the guilty plea was vacated because the attorney appointed to represent the defendant was introduced to him on the morning of the disputed plea and only spoke with the defendant for 20-30 minutes before the plea was entered.

Unlike the records considered in *People v. McGarvy* and *People v. Campos*, there is nothing in this record that suggests defendant's plea was in any sense involuntary. The record shows that, at the time of his plea, defendant had been represented by Washington for more than two months and had spoken to Washington at some length about the overall negotiation strategy before the final plea offer was accepted. The trial court found as a matter of fact that defendant's missing daughter did not appear to impair his ability to consider the prosecution's offer and knowingly accept it. On this record, the trial court was fully warranted in finding that the plea was knowing and voluntary.

III

Finally, defendant argues that Washington failed to provide him with the adequate

7

assistance of counsel.  In particular, he complains about Washington's failure to make motions to suppress his statements to police and to strike his conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

When the prosecution proffers a plea bargain, "[t]he defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial."  (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.)  If counsel does not act competently in advising a defendant with respect to a proffered plea bargain and the defendant accepts the offer, the defendant may thereafter obtain relief from his or her plea.  (*Id.* at p. 934.)

Here, defendant was charged with crimes for which he could have received a life sentence.  The prosecution's case was supported not only by defendant's own statements to police, but by statements made by defendant's wife, his wife's sister and the victim.  Given the strength of the prosecution's case and the risk of a life term, Washington's decision to pursue plea negotiations was self-evidently reasonable.

Washington's decision to forego *Miranda* and *Romero* litigation was also reasonable under the circumstances.  Washington explained at the motion to withdraw that he did not believe a *Miranda* motion with respect to the statement defendant made to police had a great deal of value.  Washington stated that the English language summary he reviewed indicated that defendant had in fact waived his Fifth Amendment rights.  Washington further testified that the prosecution had a relatively strong case supported not only by the victim's testimony but also by the testimony of defendant's wife and her

8

sister. Washington concluded and the trial court agreed that, in light of defendant's statements to the police, even if a motion to suppress was successful, defendant was in no position to contradict the witnesses because, in any event, defendant's statements could be used to impeach him. Thus, even if a *Miranda* motion was successful, given the prosecution witnesses' likely testimony and defendant's inability to contradict them, trial would nonetheless present a substantial risk of a verdict that would result in a life term.

Similarly, even if Washington were successful in convincing the trial court to strike defendant's prior conviction, the allegation that he penetrated a child under the age of 10 carried with it the risk of a life term. Thus, at the time the prosecutor made a final offer of a 29-year term, which included admission of the prior conviction, Washington could reasonably conclude that accepting the offer was still far less risky than attempting to have the prior stricken and then prevailing at trial on the penetration count.

Given the risks to defendant and the relatively small potential advantage to be gained from either a *Miranda* motion or a *Romero* motion, Washington's decision to forego those alternatives in favor of continuing negotiation with the prosecutor was reasonable and rational. The record also shows Washington fully informed defendant of the relative strength of his case and the risks of trial. In short, the record demonstrates that Washington provided adequate representation with respect to the plea bargain offered by the prosecution. (See *In re Alvernaz*, *supra*, 2 Cal.4th at p. 933.)

On appeal, in addition to arguing Washington's performance was inadequate, defendant contends that retained counsel was inadequate in pursuing the motion to

withdraw because he also failed to obtain and present an English language translation of the police interview. The difficulty for defendant is, again, in demonstrating he was prejudiced by the absence of a translation. (See *Strickland v. Washington* (1984) 466 U.S. 668, 699-700.) As we have discussed, even if successful, a *Miranda* motion would not have altered the very substantial risks defendant faced at the time the prosecution made its 29-year offer and, thus, the substantial benefit of the offer. In this context, retained counsel's failure to obtain a translation of the interview would not have improved the likelihood of obtaining relief from the plea because it would not have undermined the rationale for accepting the prosecution's offer: the strength of the prosecution's case even if it were unable to offer defendant's statement in its case-in-chief.

## DISPOSITION

The judgment of conviction is affirmed.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

NARES, J.

_____

O'ROURKE, J.

10